UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICHARD BILAUSKI,                    )
                                     )
               Petitioner,           )
                                     )
        v.                           )      No.  4:09CV1983 RWS
                                     )                    (FRB)
TROY STEELE, et al.,                 )
                                     )
               Respondents.          )


**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

        This  matter  is  before  the  Court  on  Missouri  State
prisoner  Richard  Bilauski's  petition  for  writ  of  habeas  corpus
pursuant  to  28 U.S.C. § 2254.  All pretrial matters were referred
to  the  undersigned  United  States  Magistrate  Judge  pursuant  to  28
U.S.C. § 636(b) for appropriate disposition.

        Petitioner  brings  this  habeas  action  asserting  that  he
was denied the effective assistance of counsel on direct appeal of
his  conviction  obtained  in  the  Circuit  Court  of  the  City  of  St.
Louis, Missouri.  Petitioner specifically contends that counsel was
ineffective  for  failing  to  raise  on  direct  appeal  a  claim  that  the
trial court erred in failing to permit petitioner to proceed *pro se*
at trial and for failing to conduct a hearing pursuant to <u>Faretta
v. California</u>[1]  to  determine  petitioner's  competence  to  waive
counsel.  Petitioner exhausted the instant claim of ineffective

_____

        [1]422 U.S. 806 (1975).

assistance of counsel in State court by raising the claim in a motion for post-conviction relief and on appeal of the denial of the motion. In denying petitioner's claim on post-conviction appeal, the Missouri Court of Appeals determined in a *per curiam*, unpublished memorandum that counsel's failure to raise a <u>Faretta</u> claim on direct appeal did not amount to ineffective assistance inasmuch as counsel's decision was a matter of trial strategy and, further, because such a claim——had it been raised——would not have required reversal of petitioner's conviction. (Resp. Exh. L.) This habeas action followed.

Because the Missouri Court of Appeals' decision involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States, and was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, the undersigned recommends that petitioner Richard Bilauski's petition for writ of habeas corpus be conditionally granted.

## I. <u>Faretta v. California</u>

A defendant in a State criminal trial has a Sixth Amendment right to self-representation, that is, to proceed without counsel. <u>Faretta v. California</u>, 422 U.S. 806 (1975).

> The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant——not an organ of the State interposed between an unwilling defendant and his right to defend himself

> personally.  To thrust counsel upon the accused, against
> his considered wish, thus violates the logic of the
> Amendment.  In such a case, counsel is not an assistant,
> but a master; and the right to make a defense is stripped
> of the personal character upon which the Amendment
> insists.

Id. at 820 (footnote omitted).

As such, a State may not force a criminal defendant to be represented by a lawyer if the defendant properly asserts his right to self-representation.  Id. at 836.  "[T]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails."  Id. at 819-20.  This is so, despite that it is "undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts."  Faretta, 466 U.S. at 834.

To invoke this Sixth Amendment right to proceed *pro se*, a defendant must voluntarily elect self-representation and knowingly and intelligently waive the reciprocal, constitutionally-protected right to counsel.  Faretta, 466 U.S. at 835; Johnson v. Zerbst, 304 U.S. 458 (1938).  A request to proceed *pro se* must be clearly, unequivocally, and timely asserted.  Jones v. Norman, 633 F.3d 661, 667 (8th Cir. 2011); United States v. Lorick, 753 F.2d 1295, 1298 (4th Cir. 1985).  Upon a criminal defendant's clear, unequivocal, and timely assertion of this Sixth Amendment right, the trial court must inform the defendant of the dangers and disadvantages of self-representation, "so that the record will

establish that he knows what he is doing . . . ." <u>Faretta</u>, 422 U.S. at 835. <u>See also</u> <u>Jones v. Steele</u>, 660 F. Supp. 2d 1059, 1070 (E.D. Mo. 2009), <u>aff'd sub nom</u> <u>Jones v. Norman</u>, 633 F.3d 661 (8th Cir. 2011). The purpose of such an inquiry "is to convey warnings to the defendant and ensure that in light of those warnings, he still wishes to proceed without counsel." <u>Jones</u>, 660 F. Supp. 2d at 1070 (citing <u>Iowa v. Tovar</u>, 541 U.S. 77, 87-93 (2004)). The test under <u>Faretta</u> is whether a defendant's waiver of counsel is made with sufficient awareness of the right to have counsel, not whether the defendant can ably defend himself. <u>Jones</u>, 633 F.3d at 667. The wrongful denial of a criminal defendant's right to represent himself is not harmless. <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 177 n.8 (1984). <u>See also</u> <u>Cross v. United States</u>, 893 F.2d 1287, 1290-91 (11th Cir. 1990) (dicta) (if the facts are sufficient to show a <u>Faretta</u> violation, a court is compelled to find reversible error).

Once invoked, a defendant's right to proceed *pro se* may be waived. <u>McKaskle</u>, 465 U.S. at 182.

> Participation by counsel with a *pro se* defendant's express approval is, of course, constitutionally unobjectionable. A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense. . . .
>
> . . . Even when he insists that he is not waiving his <u>Faretta</u> rights, a *pro se* defendant's solicitation of or acquiescence in certain types of participation by counsel substantially undermines later protestations that

counsel interfered unacceptably.

Id.

A defendant's *pro se* efforts may also be undermined "by his own, frequent changes of mind regarding counsel's role." Id. "Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that . . . counsel be silenced." Id.

Against this backdrop, the undersigned turns to petitioner's claim that appellate counsel was ineffective for failing to raise on direct appeal a claim that the trial court violated his Sixth Amendment right to represent himself as established by Faretta.

## II.   Facts and Prior Proceedings

On June 10, 2001, petitioner was involved in an altercation with acquaintances Robert Vessell and Danny Rose whereby petitioner used a pogo stick to strike Mr. Vessell and a baseball bat to strike both Mr. Vessell and Mr. Rose, causing serious physical injury to both men.  Mr. Vessell subsequently died from complications resulting from his injuries.

On December 6, 2001, petitioner was charged by way of indictment with Murder Second Degree, Assault Second Degree, and two counts of Armed Criminal Action.  Attorney Talat M. Bashir, an

assistant public defender, was appointed to represent petitioner and entered his appearance on January 11, 2002. On February 7, 2002, a substitute information in lieu of indictment was filed in the cause, setting out the same offenses as alleged in the indictment. (Resp. Exh. C at 1-6.)

On February 15, 2002, petitioner filed, *pro se*, a written Request for New Counsel in which he averred that he had numerous problems with his appointed counsel including that counsel did not do what petitioner asked, did not understand English, and was not capable of handling the case. Petitioner requested that another attorney be appointed to represent him. (Resp. Exh. C at 13-14.) The Request was filed and docketed with the court. (<u>Id.</u> at 6.) With this Request for New Counsel, petitioner also filed a *pro se* "Motion to Request Disclosure of Dispatcher's 911 Tape" and a *pro se* "Motion for Discovery of the Arrest and Conviction Reports of All Witnesses to be Called by the State in this Cause." (<u>Id.</u> at 15-16.) No action was taken on either the Request for New Counsel or the discovery motions.

On April 5, 2002, petitioner filed, *pro se*, a written Request for Waiver of Counsel in which he set out the offenses with which he was charged and the maximum sentence for said offenses. Petitioner also averred that he was aware of his right to a trial on the charges and a right to a trial by jury; that he was aware that any recommendations by a prosecuting attorney or other

prosecuting official were not binding on the judge and that any such recommendations may or may not be accepted by the judge; that if he plead guilty or was found guilty of the charge, the judge would most likely impose a sentence of confinement; and that, if indigent and unable to employ an attorney, he was entitled to request appointed counsel and to have counsel appointed in the matter. Acknowledging that he understood these averments, petitioner stated that he "wish[ed] to waive the assistance of counsel in this case" and requested the court to "grant his request to waive the assistance of counsel in this matter." (Resp. Exh. C at 17-18.) The Request was notarized and filed and docketed with the court. (Id. at 6.) No action was taken on the Request.

On June 18, 2002, attorney Bashir filed a Motion to Compel Blood Testing which was heard and granted by the trial court on June 27, 2002. (Resp. Exh. C at 19-22.) The record is silent as to whether petitioner was present at this hearing on June 27, 2002.

Thereafter, the record shows little action to have occurred in the cause until November 15, 2002,[2] whereupon petitioner filed, *pro se*, a written Request for New Counsel in which he averred that he continued to have problems with his

_____

[2]The trial court's docket shows only that a "Memorandum to the Clerk and Copies of Business Records" was filed October 3, 2002, but the filer is not identified. (Resp. Exh. C at 7.) The trial court's Legal File does not contain such a Memorandum. (See Resp. Exh. C.)

appointed counsel, Mr. Bashir:

> I have filed several motion myself and told Mr. Bashir he
> still doesn't do his job. I don't like the way he has
> handle my case. I been here for 17 months. I filed
> sevral motion to get a new consel before I go to trail.
> I am not letting this man defend my life. I have to I
> will get a third degree assault for smacking his ass sit
> and wait for someone who willing to go to trail on my
> case. [sic]

(Resp. Exh. C at 24.)

The Request was filed and docketed with the court. (<u>Id.</u> at 7.)
With this Request for New Counsel, petitioner also filed a *pro se*
"Motion for Disclosure to Defendant" and a *pro se* "Motion to
Request Disclosure of Dispatcher's 911 Tape." (<u>Id.</u> at 25-27.) No
action was taken on either the Request for New Counsel or the
discovery motions.

 The trial court's docket sheet shows a "Motion" to have
been filed on petitioner's behalf on December 13, 2002. (Resp.
Exh. C at 7.) The nature of the motion is not set out in this
docket entry, nor does the docket entry reflect whether the motion
was filed by petitioner *pro se* or through counsel, Mr. Bashir. The
trial court's Legal File does not contain this motion. (<u>See</u> Resp.
Exh. C.)

 Finally, on December 23, 2002, petitioner filed, *pro se*,
another written Request for New Counsel in which he stated that he
was "having hard times with this man he don't do what I ask [sic]."
Petitioner also stated that he had "filed several motion get him

off my case [sic]." (Resp. Exh. C at 28-29.) The Request was filed and docketed with the court. (Id. at 7.) With this Request for New Counsel, petitioner also filed a *pro se* "Motion for Disclosure" and a *pro se* "Notice of Deposition" requesting that he be permitted to depose four named individuals. (Id. at 30-32.) No action was taken on either the Request for New Counsel or the discovery motions.

Petitioner appeared in court on January 21, 2003, for trial. Prior to the commencement of trial, the judge stated on the record that he had "reviewed the file and one of the issues that came up was, I believe, the defendant should be tried in civilian attire." (Resp. Exh. D at 2.) The judge then addressed the matter of security and the extent to which petitioner would be restrained during trial:

> THE COURT:      . . . Now, as far as security, you're restrained right now.  That's one of the reasons why I want to come out here to see where your mind is this morning.
>
> DEFENDANT:      Right, it's fine.
>
> THE COURT:      Okay.
>
> DEFENDANT:      I'm fine.
>
> THE COURT:      It's in your best interest, the way I view this case, you have a story to tell.
>
> DEFENDANT:      Right.
>
> THE COURT:      Sometimes we have cases in the courtroom about drive-by shootings and someone is just standing on a street corner and gets shot and the victim is just

completely passive and gets shot and dies. As I understand it, and you still enjoy all of your rights, you have no obligation to testify or anything else, you have a right to remain silent, you're aware of that, aren't you?

DEFENDANT:    Yes, sir.

THE COURT:    The way I view -- the way I see this, there are issues here of self defense and different people, the person that Mr[.] -- what is it, Mr. Vessell, the fellow that is dead, he did certain things, you did certain things, it's open to interpretation. I don't know what the trier of fact, the jury, will decide, but it's in your best interest as it is with anybody who appears before the jury to act like a gentleman --

DEFENDANT:    Yes, sir.

THE COURT:    -- a civilized person. I want to tell you Mr. Bashir has tried many cases in my courtroom. He has had success, some acquittals, some lesser included offenses, other dispositions, so, and many times it's a function of how a defendant behaves in front of the jury, so, if you tell me that your mind is okay, we can remove some of those restrictions.

DEFENDANT:    I'm fine, Your Honor.

THE COURT:    Are you?

DEFENDANT:    Yes, sir. I'm good to go, I'm ready.

THE COURT:    All right. Fair enough. Then, it will be up to the sheriffs. If you live up to that, fine; if there is any retreat from that position then we'll have to take other measures.

DEFENDANT:    Ain't going to be no problems.

(Resp. Exh. D at 2-4.)

Immediately after this exchange, petitioner was permitted to change into civilian clothes and the venire panel was brought to the courtroom to begin the process of voir dire examination. (Id. at

4.) The trial record reflects that petitioner's Request for Waiver of Counsel and Requests for New Counsel were never addressed.

Mr. Bashir represented petitioner throughout trial, at which petitioner testified. On January 23, 2003, the jury convicted petitioner of Voluntary Manslaughter, Assault Second Degree, and two counts of Armed Criminal Action. Petitioner was represented by Mr. Bashir at sentencing and was sentenced as a prior and persistent offender to terms of imprisonment aggregating thirty years. Upon questioning by the court at sentencing, petitioner stated that he was not satisfied with counsel's representation in that counsel failed to obtain and present certain evidence as requested by petitioner. (Resp. Exh. D at 410-11.) Neither petitioner's Request for Waiver of Counsel nor Requests for New Counsel were addressed at sentencing or in petitioner's Motion for New Trial. (Resp. Exh. C at 65-66, Exh. D at 404-14.)

Petitioner appealed his conviction and was represented by appointed counsel, Vanessa Caleb. In her brief on appeal filed in November 2003, attorney Caleb raised one claim: That the trial court committed plain error by explaining the concept of jury nullification to the venire panel. (Resp. Exh. A.) On March 9, 2004, the Missouri Court of Appeals determined not to review the claim for plain error and summarily affirmed the judgment of the circuit court. (Resp. Exh. E.)

Thereafter, on May 11, 2004, petitioner filed a motion

for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 wherein he raised claims of ineffective assistance of trial counsel and ineffective assistance of direct appeal counsel, including the claim raised here regarding appellate counsel's failure to raise a <u>Faretta</u> claim on appeal. (Resp. Exh. H.) Several years later, on August 6, 2007, a hearing was held on the motion. (Resp. Exh. I.)

At the hearing in August 2007, petitioner testified that several months prior to trial, he filed multiple *pro se* motions with the trial court including a Request for Waiver of Counsel. Petitioner testified that, with the filing of this Request, he intended to communicate to the court that he wanted to represent himself in the case. Petitioner testified that he heard nothing from the court regarding his Request, from which he inferred that the Request would not be granted. Petitioner testified that he therefore tried to fire his appointed attorney, with whom he was dissatisfied, by filing Requests for New Counsel. Petitioner testified that prior to the start of trial on January 21, 2003, the trial judge stated that he would not permit petitioner to represent himself and that petitioner would be better off with Mr. Bashir. Petitioner testified that the judge provided no other reason for not permitting him to proceed *pro se*. (Resp. Exh. I at 8-13.) The State then questioned petitioner regarding his Requests for New Counsel as opposed to his Request for Waiver of Counsel:

Q     All right.  You tried to fire Mr. Bashir at least
      two times by your account, correct?

A     Five times.

Q     Five times.  And it wasn't so much that you didn't
      want a lawyer, you did not want Mr. Bashir?  You
      wanted a different lawyer?

A     If not, I would have taken it in my own hands and
      represented myself.

Q     But you didn't do that in this case?

A     No, sir.  It wasn't meant to be.

(Id. at 18-19.)


On redirect examination, petitioner testified as follows:


Q     . . . I think you stated you preferred to go on
      your own if you could not get a different attorney
      than Mr. Bashir, is that right?

A     Yes, ma'am.

.  .  .

.  .  .

Q     But given the choice of going on your own versus
      proceeding with Mr. Bashir, you preferred to go on
      your own?

A     Yes, ma'am.

Q     And is that what you were attempting to communicate
      to the Judge by your --

A     Yes, ma'am.

Q     -- by your motion to proceed pro se?

A     Yes, ma'am.

Q      Okay.  And that was filed -- just so the record is
       clear, you filed three motions before that to get
       rid of Mr. Bashir?

A      Yes, ma'am.

Q      One pro se motion?

A      Then two more.

Q      And then two more to try to get Mr. Bashir off your
       case?

A      Yes, ma'am.

Q      Okay.  The day of trial were you at all confused
       about that issue?

A      Yes, ma'am.

Q      Were you wanting to go on, proceed on your own at
       that time?

A      Well, after all, [the judge] said stick with Mr.
       Bashir here, I mean, there ain't nothing I can
       pretty much do, you know.

Q      So, you had no choice but to proceed?

A      Yeah, I had no choice.

(Id. at 29-31.)


       On May 27, 2008, appellate counsel Caleb was deposed for

purposes of the post-conviction proceeding and testified that she

recalled discussions and documents in the legal file reflecting

petitioner's wish to proceed in the cause pro se, but that she did

not remember conducting any legal research on the matter or making

a strategic decision not to include the issue on appeal.  (Resp.

Exh. K at 13.)  "I certainly don't remember making any type of

strategic decision.    I don't remember dismissing it as non

meritorious." (Id.)

    Q      That is saying -- I mean, are you saying that had
            you noticed the Faretta issue that you would have
            raised that on appeal as a meritorious issue?

    A      I think so.  I mean, what I really, just to be
            clear, I think I was aware of a Faretta-type issue
            that I had a colleague working very hard on a case
            where someone had tried to go pro se and she was
            doing a lot of Faretta research, so I knew about
            the issue somewhat.  I knew it was a viable issue
            to raise on direct appeal.  I don't know why I
            chose or I don't know why I did not raise it.  I
            don't know if -- I have no specific recollection
            and I don't believe in my conversations with you
            and I don't believe that my file reflects one way
            or the other, so, it's -— so, I guess, I don't
            really remember the decision-making process but I
            think it's quite possible and I think the record
            will reflect that I possibly missed a viable issue
            on appeal that could have been successful for Mr.
            Bilauski.

    Q      Let me ask you this.  Having seen -- let's suppose
            for the moment that you had -- I mean, can you
            think of any reasons at this time on appeal why an
            attorney wouldn't raise a viable Faretta issue?

    A      Absolutely not.  I think I should have.  I should
            have raised it.  If the record shows, I'm relying
            somewhat on, you know, on our case then because I
            don't know exactly, I don't remember specifically,
            there was never a ruling held on his clear request,
            that there was never a Faretta hearing[.] . . . So,
            if the record shows that procedurally the case was
            in a posture where there should have been a Faretta
            hearing held, I think my professional opinion and
            experience should have -- should have raised that
            on his appeal.

   . . .

    A    . . . I have no explanation for why I would have
            chosen not to pursue it except perhaps I just

missed it, I just neglected to do so and, really, I'm just -- can only rely on what the record will bear out, but I did not make -- I don't have any recollection of, like, making some sort of -- doing some research and making a conscious decision this is not a viable issue[.]

(Id. at 14-16.)

The State then asked Ms. Caleb about a circumstance where a defendant may file a motion to proceed *pro se* and then subsequently file motions requesting new counsel, and whether such a circumstance would be considered in determining whether to pursue a <u>Faretta</u> issue on appeal.

     A    It absolutely would, and I don't know if when, two things come to mind, is that the circumstances that you're describing, if that's what the record shows that may be why I dismissed, decided not to raise this issue, but I don't know that that was a correct legal issue or not, I would have to, you know, go back or, you know, rely on you all on seeing what the law is whether or not I should have pursued that first motion to go pro se, but that the total picture you're describing in particular, the client's failure to again go pro se and at the time of trial failure to ask for that again and instead just asking for new counsel is something I would consider and it would, for me, I mean, I, you know, I have recently found research on this issue, it has been some time, I certainly have a general understanding that a defendant, while entitled to counsel, are [sic] not entitled to counsel of their choosing.

    . . .

    A    . . . I know there's a lot of case law in Missouri on it and this could be why I overlooked the issue or dismissed the issue if it just had appeared to me that Mr. Bilauski was trying to get someone he liked better, but I don't -- but I can't say one

```
            way or the other.

    Q       You don't really have any independent recollection
            of that specific thought process?

    A       Not really.

(Id. at 27-28.)
```

On July 1, 2008, the post-conviction motion court denied petitioner's motion and determined the instant claim of ineffective assistance of direct appeal counsel to be without merit:

> The Court finds this claim is without merit. Movant never presented a motion to the Court, made an oral request to the Court or otherwise advised the Court of a desire to waive counsel. In addition, movant filed two motions asking for the appointment of new counsel from the Office of the Public Defender after he filed his request to waive counsel, thereby repudiating any desire to waive counsel.

(Resp. Exh. H at 69.)

On post-conviction appeal, the Missouri Court of Appeals reviewed Ms. Caleb's deposition testimony and determined that her decision to forego the Faretta claim on appeal was a matter of trial strategy inasmuch as her testimony showed

> that in a case in which the defendant filed a motion to represent himself and later expressed the desire to have new counsel it might be a basis not to raise the issue of waiver of counsel on direct appeal because it would not be meritorious. According to appellate counsel, if it appeared to her movant was simply trying to obtain new counsel rather than waive his right to counsel, she may have decided not to raise the issue on direct appeal.

(Resp. Exh. L, Memo. at 4-5.)

The court of appeals thus found that there was no basis for a claim of ineffective assistance of counsel. (<u>Id.</u> at 5.) The court of appeals further determined that a <u>Faretta</u> claim, had it indeed been raised on direct appeal, would not have required a reversal of petitioner's conviction and that, therefore, counsel was not ineffective for failing to raise the claim:

> In addition, the issue of whether movant should have been allowed to proceed *pro se* would not have required reversal on direct appeal. A defendant must explicitly and unequivocally waive counsel in order to represent himself. <u>Phillips v. State</u>, 214 S.W.3d 361, 365 (Mo. App. 2007). "A court must indulge in every reasonable presumption against a [defendant's] waiver of his right to counsel. . . ." <u>Id.</u> (<u>quoting</u> <u>State v. Hampton</u>, 959 S.W.2d 444, 447 (Mo. banc 1997)). The defendant must make a knowing, intelligent, voluntary, and unequivocal request to represent himself before the court can conclude he has waived his right to counsel. <u>Id</u>.

> Here, the motion court found movant filed motions seeking appointment of new counsel after his request to waive counsel, "thereby repudiating any desire to waive counsel." Movant initially filed a form request for waiver of counsel. He subsequently filed requests for new counsel. Movant also testified at the evidentiary hearing that if he could not obtain new counsel he preferred to "go on [his] own." Movant acknowledged that with his motion to waive counsel he was attempting to communicate that given the choice between his current trial counsel and representing himself, he preferred to proceed *pro se*. Thus, it is clear from the record movant wanted counsel, just not his current trial counsel. His motions seeking appointment of new counsel were not explicit, unequivocal requests to waive counsel. Instead these requests reflected movant's desire to be represented by counsel, just not trial counsel himself. As such, an argument on direct appeal concerning movant's attempt to waive counsel would not have required reversal, and therefore, appellate counsel was not

ineffective for failing to raise such argument.  <u>Boyd[ v.
State</u>], 86 S.W.3d [153, ] 159 [Mo. Ct. App. 2002].  The
motion court did not clearly err in denying movant's
claim of ineffective assistance of appellate counsel.
Point denied.

(<u>Id.</u> at 5-6.)

The court of appeals affirmed the denial of petitioner's
motion for post-conviction relief on July 21, 2009.  (Resp. Exh.
L.)  Petitioner, acting *pro se,* timely filed the instant petition
for writ of habeas corpus on December 2, 2009.  At petitioner's
request, counsel was subsequently appointed in this action.

### III.  Standard of Review

"In the habeas setting, a federal court is bound by the
AEDPA [Antiterrorism and Effective Death Penalty Act] to exercise
only limited and deferential review of underlying state court
decisions."  <u>Lomholt v. Iowa</u>, 327 F.3d 748, 751 (8th Cir. 2003).
Under this standard, a federal court may not grant habeas relief to
a State prisoner unless the State court's adjudication of a claim
"resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States," 28 U.S.C. §
2254(d)(1); or "was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding," 28 U.S.C. § 2254(d)(2).  <u>See</u> <u>Williams v. Taylor</u>, 529
U.S. 362, 379 (2000).  The Federal law must be clearly established
at the time petitioner's State conviction became final, and the

- 19 -

source of doctrine for such law is limited to the United States Supreme Court. <u>Williams</u>, 529 U.S. at 380-83; <u>Jones</u>, 633 F.3d at 666.

A State court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001). A State court's decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. Merely erroneous or incorrect application of clearly established Federal law does not suffice to support a grant of habeas relief. Instead, the State court's application of such law must be objectively unreasonable. <u>Id.</u> at 409-11; <u>Jackson v. Norris</u>, 651 F.3d 923, 925 (8th Cir. 2011). Finally, when reviewing whether a State court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the State court proceedings, this Court must presume that State court findings of basic, primary, or historical facts are correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Rice v. Collins</u>, 546 U.S. 333, 338-39 (2006);

Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not *ipso facto* ensure the grant of habeas relief, however. Instead, the determination of such facts must be *unreasonable* in light of the evidence of record. Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

## IV. Discussion

At the time petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel, including effective assistance on direct appeal. Strickland v. Washington, 466 U.S. 668, 686 (1984); Evitts v. Lucey, 469 U.S. 387, 396-97 (1985). When evaluating claims of ineffective assistance of direct appeal counsel, the Court must apply the Strickland standard of review. Pfau v. Ault, 409 F.3d 933, 939 (8th Cir. 2005). As such, to prevail on a claim of ineffective assistance of direct appeal counsel, petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687.

In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688. Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Indeed, a strong presumption exists that

counsel's conduct "might be considered sound trial strategy." <u>Id.</u> (internal quotation marks and citation omitted). Decisions relating to trial strategy are "virtually unchallengeable." <u>Id.</u> at 690. To demonstrate prejudice on account of counsel's failure to raise a claim on appeal, petitioner must show a "reasonable probability that an appeal of [the] issue would have been successful and that the result of the appeal would thereby have been different." <u>Pryor v. Norris</u>, 103 F.3d 710, 714 (8th Cir. 1997); <u>see also</u> <u>Pfau</u>, 409 F.3d at 939-40 (petitioner must show that but for appellate counsel's error, he would have prevailed on appeal).

Because this Court reviews petitioner's claim of ineffective assistance of counsel in the habeas context, it must be careful not to apply the <u>Strickland</u> analysis as if the claim were being addressed in the first instance. In order to succeed on this habeas claim under § 2254(d)(1), therefore, "'it is not enough [for petitioner] to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. Rather, he must show that the [Missouri] Court of Appeals applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.'" <u>Hoon v. Iowa</u>, 313 F.3d 1058, 1063 (8th Cir. 2002) (quoting <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002)) (internal citation omitted in <u>Hoon</u>). For the following reasons, petitioner has succeeded in doing so here.

In its decision denying petitioner relief on his claim of ineffective assistance of direct appeal counsel, the Missouri Court of Appeals set out the <u>Strickland</u> standard of review and correctly determined such standard to apply to claims involving counsel on direct appeal:

> To prevail on his claim of ineffective assistance of trial counsel, movant must prove that counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that but for counsel's failure the outcome would have been different. <u>Boyd</u>, 86 S.W.3d at 157-58; <u>Strickland v. Washington</u>, 466 U.S. 668, 687[] (1984). We presume counsel's representation was reasonable and not ineffective. <u>Id</u>. In addition, reasonable decisions concerning trial strategy cannot support a claim of ineffective assistance of counsel. <u>Id</u>.
>
> . . .
>
> To prevail on a claim of ineffective assistance of appellate counsel, movant must meet the general requirements set forth in <u>Strickland</u>. <u>Boyd</u>, 86 S.W.3d at 159. Movant must also show that the error appellate counsel failed to raise would have required reversal had it been presented on direct appeal. <u>Id</u>.

(Resp. Exh. L, Memo. at 3-4.)

Because the court of appeals identified the correct governing legal principle emanating from Supreme Court decisions, this Court must now look to whether the court of appeals unreasonably applied that principle to the facts of petitioner's case. For the following reasons, the Missouri Court of Appeals' application of <u>Strickland</u> to the facts of petitioner's case was objectively unreasonable.

A.   Performance Prong

When analyzing Ms. Caleb's performance in failing to raise petitioner's Faretta claim on direct appeal, the Missouri Court of Appeals determined the record to "support[] a conclusion that appellate counsel's decision not to appeal the issue was trial strategy[.]" (Resp. Exh. L, Memo. at 5.)  By finding counsel's challenged conduct to constitute trial strategy, the court of appeals held that such conduct could not provide a basis for a claim of ineffective assistance.  (Id.)  In making this determination, the court of appeals summarized its review of the underlying record as follows:

Movant argues appellate counsel's deposition testimony for the evidentiary hearing supports his claim because she "stated that she had no reason for failing to raise this claim, and as such, may have been ineffective in failing to raise what was certainly a valid claim." However, movant's argument misstates appellate counsel's testimony.  During her deposition, counsel stated she did not remember anything specific about her decision not to raise the issue on direct appeal.  She testified if the record showed there should have been a hearing held regarding movant's request to waive counsel the issue should have been raised on direct appeal.  However, counsel also testified that in a case in which the defendant filed a motion to represent himself and later expressed the desire to have new counsel it might be a basis not to raise the issue of waiver of counsel on direct appeal because it would not be meritorious. According to appellate counsel, if it appeared to her movant was simply trying to obtain new counsel rather than waive his right to counsel, she may have decided not to raise the issue on direct appeal.

(Id. at 4-5.)

The Missouri Court of Appeals' summary of Ms. Caleb's testimony is incomplete. When the entirety of her testimony is considered, it is apparent that the court of appeals' conclusion that Ms. Caleb made a strategic decision not to raise a _Faretta_ claim on appeal was objectively unreasonable.

A presumption exists that counsel's conduct "might be considered sound trial strategy." _Strickland_, 466 U.S. at 688. However, "the strength of the presumption turns on the adequacy of counsel's investigation[.]" _White v. Roper_, 416 F.3d 728, 732 (8th Cir. 2005). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." _Strickland_, 466 U.S. at 690-91. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." _Id._ at 691.

Here, Ms. Caleb testified that while she recalled petitioner's legal file to show that he wanted to proceed _pro se_ and was aware at that time of the significance of a _Faretta_-type

issue, she did not recall investigating the claim for petitioner's appeal. Ms. Caleb specifically testified that she had no recollection of "doing some research and making a conscious decision" that a <u>Faretta</u> claim was not a viable issue and "certainly [did not] remember making any type of strategic decision." (Resp. Exh. K at 13, 16.) As such, on the facts presented, it cannot be said that counsel's decision not to raise a <u>Faretta</u> issue on appeal was made after a thorough investigation of the law and facts relevant to the claim.

Nor can it be said on the facts presented that counsel made a reasonable decision *not* to investigate a <u>Faretta</u> claim. Despite respondents' argument that Ms. Caleb would have considered a defendant's seeking new counsel after filing a motion to proceed *pro se* in determining whether a <u>Faretta</u> claim would be meritorious, and that she must have done so in this case inasmuch as examining the case file was her general practice, respondents overlook Ms. Caleb's testimony that even in such a circumstance, she did not know the correct law on the issue. "I don't know that that was a correct legal issue or not, I would have to, you know, go back or, you know, rely on you all on seeing what the law is whether or not I should have pursued that first motion to go pro se[.]" (Resp. Exh. K at 27.) It cannot be said that an attorney's decision not to investigate a potentially viable <u>Faretta</u> issue is reasonable when the attorney admittedly is unfamiliar with the law as it

applies to the particular facts of the case. In addition, to the extent Ms. Caleb testified that she would consider this circumstance in determining whether to raise a <u>Faretta</u> claim, she testified that such consideration would be based on research that she "recently found[.]" (<u>Id.</u> at 28.) The reasonableness of counsel's conduct, however, must be evaluated as of the time the challenged conduct occurred. <u>Strickland</u>, 466 U.S. at 690. Accordingly, Ms. Caleb's testimony adduced in May 2008 that "recently found" research could support a decision not to pursue a <u>Faretta</u> claim does not excuse ignorance of the law at the time petitioner's direct appeal was pursued in November 2003. <u>E.g.</u>, <u>White</u>, 416 F.3d at 732 ("[T]he presumption of sound trial strategy founders . . . on the rocks of ignorance[.]") (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 527-28 (2003)).

Furthermore, the only claim raised by Ms. Caleb on direct appeal——that the trial court erred in explaining the concept of jury nullification to the venire panel——could be reviewed by the court of appeals only for plain error inasmuch as the claim was not preserved at trial. At her deposition in May 2008, Ms. Caleb testified that seeking plain error review on this unpreserved claim "ma[de] the burden on Mr. Bilauski much, much higher in terms of his intent for relief . . . . [W]e have to show some sort of manifest injustice to establish the plain error burden which is really difficult in something that that [sic] we win very rarely."

(Resp. Exh. K at 9-10.)  Ms. Caleb testified that with seeking plain error review on the jury nullification claim, "[she] had to establish there was manifest injustice in this case, which is very difficult to get relief on." (Id. at 10.)  As such, the record shows Ms. Caleb to have recognized the inherent difficulty in pursuing the jury nullification claim as petitioner's sole claim on direct appeal as well as her awareness that petitioner would likely not obtain relief thereon.  Such a claim is in stark contrast to a Faretta claim which, even if unpreserved, would not be subject to the same limited review.  The denial of the right to represent oneself is not amenable to harmless error analysis.  McKaskle, 465 U.S. at 177 n.8.  "The right is either respected or denied; its deprivation cannot be harmless." Id.; see also Cross, 893 F.2d at 1290-91 (if the facts are sufficient to show a Faretta violation, a court is compelled to find reversible error).  On the evidence presented at the State court proceeding, no explanation appears to justify counsel's determination to forge ahead with the weaker jury nullification claim and forego a potentially viable Faretta claim. See White, 416 F.3d at 732 (record showed counsel's investigation was too superficial to reveal comparative strength of available options); Orazio v. Dugger, 876 F.2d 1508, 1513 (11th Cir. 1989) (neglecting to investigate grounds for appeal, resulting in failure to raise Faretta claim, constitutes deficient representation under Strickland).

Accordingly, the Missouri Court of Appeals' determination that "the record supports a conclusion that appellate counsel's decision not to appeal the issue was trial strategy" was an unreasonable application of <u>Strickland</u>'s "trial strategy" analysis to the facts of petitioner's case. The facts as presented in the State court record strongly suggest that counsel's failure to raise a <u>Faretta</u> claim on direct appeal was the result of oversight and inattention, not reasoned strategic judgment. Indeed, counsel admitted to such. In finding counsel's conduct to nevertheless constitute trial strategy, the Missouri Court of Appeals unreasonably applied <u>Strickland</u>. <u>See Wiggins v. Smith</u>, 539 U.S. 510, 534 (2003).

B.  <u>Prejudice Prong</u>

In order for counsel's inadequate performance to constitute a Sixth Amendment violation, petitioner must show that he was prejudiced by counsel's deficient conduct. <u>Wiggins</u>, 539 U.S. at 534; <u>Strickland</u>, 466 U.S. at 692. In the context of counsel's failure to raise a claim on appeal, petitioner must show a reasonable probability that an appeal of the issue would have been successful and that the result of the appeal would thereby have been different. <u>Pryor</u>, 103 F.3d at 714. Although the Missouri Court of Appeals identified this governing legal principle in determining whether petitioner demonstrated prejudice on account of counsel's alleged error, it unreasonably applied this principle

to the facts of petitioner's case.

　　　As set out above, the Missouri Court of Appeals determined that petitioner's conviction would not have been reversed on appeal if a <u>Faretta</u> claim had been raised, finding the underlying record to be "clear" that petitioner "wanted counsel, just not his current counsel." (Resp. Exh. L, Memo. at 6.) To support this conclusion, the court of appeals referred to petitioner's requests for new counsel and noted that they "were not explicit, unequivocal requests to waive counsel" and instead "reflected [petitioner's] desire to be represented by counsel, just not trial counsel himself." (<u>Id.</u>) While the court of appeals acknowledged petitioner's actual Request for Waiver of Counsel, the court appeared dismissive of the Request given petitioner's testimony that, by its filing, he intended to communicate to the trial court that he preferred to proceed *pro se* if he could not obtain new counsel. (<u>Id.</u> at 5.) Such reasoning to find petitioner's underlying <u>Faretta</u> claim to be without merit——and thus unable to support a finding of prejudice on account of counsel's deficient performance——was objectively unreasonable and constituted an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

　　　There can be no dispute that on April 5, 2002, petitioner filed a clear and unequivocal Request for Waiver of Counsel in his criminal cause of action. "A defendant need not 'recite some

talismanic formula hoping to open the eyes and ears of the court to his request' to invoke his/her Sixth Amendment rights under Faretta." Buhl v. Cooksey, 233 F.3d 783, 792 (3d Cir. 2000) (quoting Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th Cir. 1986)). Although respondents and the court of appeals refer to petitioner's Request as a "form request" (Resp. Exh. L, Memo. at 5) or a "fill-in-the-blank" waiver (Resp. to Show Cause Order, Doc. #8 at p. 12), a review of the Request itself shows it to contain all of the information required under Mo. Rev. Stat. § 600.051.1 (Waiver of counsel, when permitted); to contain specific, handwritten information personal to petitioner and his case; and to be signed by petitioner with such signature notarized by a notary public. This Court is aware of no authority, and respondents cite to none, demonstrating that petitioner's use of a prepared memorandum with preprinted legal verbiage and handwritten personal information and containing an explicit request to waive counsel constitutes an insufficient invocation of a criminal defendant's Sixth Amendment right to self-representation. Indeed, authority demonstrates otherwise. See, e.g., Moore v. Haviland, 531 F.3d 393, 402 (6th Cir. 2008) (two oral requests to "go *pro se*" and a letter with four alternative scenarios of representation, including one scenario of proceeding *pro se*, constituted clear requests to proceed *pro se*); Buhl, 233 F.3d at 792 (request need not be in writing or in the form of a formal motion); Spencer v. Ault, 941 F.

Supp. 832, 842 (N.D. Iowa 1996) (oral statements by defendant at hearing that he would be better off defending himself and did not want to find a lawyer constituted a clear and unequivocal request to represent himself); <u>State v. Rawlins</u>, 248 S.W.3d 680 (Mo. Ct. App. 2008) (written waiver form under Mo. Rev. Stat. § 600.051 not required in order for criminal defendant to waive counsel; defendant can impliedly waive counsel by his own conduct).

Despite petitioner having filed a clear and unequivocal written Request for Waiver of Counsel in April 2002, the trial court did nothing. Petitioner's Request remained on file, unaddressed by the court and unruled throughout the pretrial process as well as through the entirety of petitioner's trial which began in January 2003. A trial court's failure to address a criminal defendant's request to proceed *pro se* promptly and fully is contrary to <u>Faretta</u>. <u>Moore</u>, 531 F.3d at 402-03. In <u>Raulerson v. Wainwright</u>, 469 U.S. 966 (1984) (denial of cert.), Justice Marshall recognized the danger of foregoing such an immediate inquiry upon a defendant's invocation of this Sixth Amendment right and the resulting adverse effects:

> [I]f a trial court judge holds a <u>Faretta</u> hearing when the accused clearly asserts his desire to proceed *pro se*, the result will not do harm to the right of counsel. At the same time, the *failure* to hold a <u>Faretta</u> inquiry at this time *will* do injury to the right recognized in <u>Faretta</u>. Delay in holding a hearing after the right is unequivocally asserted undermines that right by forcing the accused to proceed with counsel in whom he has no confidence and whom he may distrust. For that reason, a

- 32 -

> *post hoc* effort to construe as subsequently ambiguous a
> clear assertion of a desire to proceed on one's own, such
> as that undertaken by the Court of Appeals in this case,
> contravenes the right. It encourages courts to leave a
> <u>Faretta</u> motion pending, in the hope that the request will
> eventually be construed as ambiguous. It therefore
> follows that sufficient protection of the <u>Faretta</u> right
> may only be achieved if the trial court is required to
> hold a hearing when the right is asserted.

<u>Raulerson</u>, 469 U.S. at 970 (Marshall, J., dissenting) (emphasis in
original).

Therefore, upon a clear assertion of a criminal defendant's Sixth
Amendment right to self-representation, "a court should cease other
business and make the required [<u>Faretta</u>] inquiry." <u>Id.</u> Such an
immediate hearing "assure[s] that the defendant is not required to
proceed with the unwanted assistance of counsel." <u>Id.</u> at 971. <u>See
also</u> <u>Moore</u>, 531 F.3d at 402-03 (failing to address <u>Faretta</u> issue
promptly gave defendant no choice but to proceed with counsel).

Here, petitioner filed a clear and unequivocal Request
for Waiver of Counsel in April 2002. Nothing occurred on this
Request and indeed, the trial court continued to conduct pretrial
proceedings with Mr. Bashir, petitioner's appointed counsel.
Having obtained no ruling on his Request for Waiver of Counsel
after a period of seven months, petitioner presumed his Request to
be denied and thereafter sought to at least replace the attorney
with whom he was greatly dissatisfied. The Missouri Court of
Appeals in this case found these subsequently filed Requests for
New Counsel to be "clear" indicators of petitioner's desire to

proceed with counsel. Such a finding, however, turns a blind eye to petitioner's initial and unequivocal request to proceed without counsel filed in April 2002. Such a *post hoc* rationalization to find that petitioner did not in fact invoke his Sixth Amendment right to self-representation epitomizes the danger as articulated by Justice Marshall in <u>Raulerson</u>, that is, that a trial court's failure to promptly hold a <u>Faretta</u> hearing upon a criminal defendant's clear request to proceed *pro se* will do injury to the right of self-representation as recognized in <u>Faretta</u>. Indeed, the court of appeals' reliance here on petitioner's subsequent conduct to support its finding that petitioner did not invoke his right to proceed *pro se* ignores petitioner's clear and unequivocal assertion of his right to proceed *pro se* in the first place. <u>See</u>, <u>e.g.</u>, <u>Buhl</u>, 233 F.3d at 793 n.11.

The evidence presented at the State court proceeding in this cause clearly and convincingly shows that petitioner unequivocally invoked his Sixth Amendment right to self-representation on April 5, 2002, with the filing of his Request for Waiver of Counsel. The Missouri Court of Appeals' contrary finding that the record clearly showed that petitioner "wanted counsel" constituted an unreasonable determination of the facts in light of such evidence. The evidence also shows that despite petitioner's clear and unequivocal request to proceed *pro se*, the trial court undeniably failed to rule on the request. "Such failure to make a

ruling on a criminal defendant's unequivocal request to proceed *pro se* was objectively unreasonable in light of <u>Faretta</u>." <u>Moore</u>, 531 F.3d at 403.

In addition, neither petitioner's subsequent Requests for New Counsel nor his proceeding to trial with counsel in January 2003 constitute waivers of his right to self-representation. With respect to petitioner's Requests for New Counsel, the evidence shows petitioner to have filed such Requests more than seven months after having not received a ruling on his initial Request for Waiver of Counsel. Indeed, petitioner testified that the court's failure to rule on his Request for Waiver of Counsel led him to believe that the Request was denied. In light of the evidence that the trial court did not address petitioner's clear request to waive counsel, did not address any of petitioner's *pro se* filings and motions, and continued to hear and address matters raised by petitioner's appointed counsel in the interim, it was reasonable for petitioner to infer after the passage of seven months and with an impending trial date that his Request for Waiver of Counsel was effectively denied. A defendant is not required to continually make fruitless motions to proceed *pro se* or forego cooperation with defense counsel in order to preserve the issue for appeal. <u>Buhl</u>, 233 F.3d at 803 (quoting <u>Orazio</u>, 876 F.2d at 1512). In these circumstances, and in light of petitioner's belief that the court implicitly denied his request to proceed *pro se*, petitioner's

subsequent Requests for New Counsel do not give rise to a finding that petitioner either waived his right to self-representation or withdrew his initial request. A defendant's "desire to exchange one mandatory counsel for another . . . does not signify that he was abandoning his Sixth Amendment right to have none." Williams v. Barlett, 44 F.3d 95, 101-02 (2d Cir. 1994).

To the extent petitioner proceeded to trial with counsel, petitioner testified unequivocally at the post-conviction motion hearing that he felt he had no choice but to proceed with counsel given the judge's colloquy immediately prior to trial that petitioner would be better off with Mr. Bashir's representation. The record shows such a colloquy to have occurred in the context of the judge's consideration of whether and to what extent petitioner would be restrained during trial, with such consideration dependent upon petitioner's conduct and cooperation. The petitioner's failure to renew his request to proceed *pro se* in such circumstances, and after nine months of the court's silence on the issue, cannot reasonably be construed as a waiver of his right to self-representation or as an implicit withdrawal of his prior request. Buhl, 233 F.3d at 802. See also Moore, 531 F.3d at 403-04 (after trial court's failure to rule requests to proceed *pro se*, it would be "wholly unreasonable" to require defendant, in order to preserve request to proceed *pro se*, to refuse court's order to continue with trial in light of court's admonishment regarding

disruption of trial). Given the court's failure to recognize petitioner's invocation of his right of self-representation from the outset, the trial judge's instruction immediately prior to trial that petitioner would be better off with Mr. Bashir's representation, and the trial judge's admonition regarding petitioner's conduct and cooperation in the courtroom, any "subsequent apparent acquiescence [in counsel's participation] can only in fairness be taken as a concession of [petitioner's] inability to successfully act on the right asserted." <u>Lorick</u>, 753 F.2d at 1299.

In sum, the evidence presented at the State court proceeding in this cause clearly and convincingly shows that petitioner unequivocally invoked his Sixth Amendment right to self-representation on April 5, 2002, and that petitioner's subsequent conduct constituted neither a waiver of his right to self-representation nor an implicit withdrawal of his request. The Missouri Court of Appeals' decision that petitioner's <u>Faretta</u> claim would not have succeeded on appeal was based on its unreasonable determination that petitioner did not unequivocally invoke his right to self-representation before the trial court. The trial court undeniably failed to address or rule on petitioner's unequivocal request to proceed *pro se*, thereby resulting in petitioner being denied his Sixth Amendment right to self-representation, as recognized in <u>Faretta</u>. In light of these

circumstances, and given that a <u>Faretta</u> error cannot be considered harmless, there is a reasonable probability that the outcome of petitioner's appeal would have been different if the <u>Faretta</u> claim had been raised. <u>Spencer</u>, 941 F. Supp. at 841 (if defendant's Sixth Amendment right to represent himself is violated, defendant is entitled to reversal); <u>cf. Matire v. Wainwright</u>, 811 F.2d 1430, 1439 (11th Cir. 1987) (where error is not harmless, there is a reasonable probability that result on direct appeal would have been different).

## V. Conclusion

Accordingly, for all of the foregoing reasons, the Missouri Court of Appeals' decision that appellate counsel's failure to raise a <u>Faretta</u> claim on direct appeal did not constitute ineffective assistance inasmuch as her performance was a matter of trial strategy and that such a claim, had it been raised, would not have required reversal, involved an objectively unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States, and was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. In light of counsel's deficient performance in failing to raise a <u>Faretta</u> claim on direct appeal, and the reasonable probability that such claim would have been successful and the result of the appeal would have been different, petitioner was denied his Sixth Amendment right to

effective assistance of counsel on direct appeal.  As a result,
petitioner is entitled to relief on his claim of ineffective
assistance of counsel as raised in the instant petition for writ of
habeas corpus.

## VI.  Relief

The Court has broad discretion to fashion appropriate
habeas relief.  <u>See</u> 28 U.S.C. § 2243 ("The court shall summarily
hear and determine the facts, and dispose of the matter as law and
justice require.").  In a case based on ineffective assistance of
direct appeal counsel, it is appropriate to find petitioner
entitled to a new appeal rather than a new trial.  <u>See</u> <u>Grady v.
Artuz</u>, 931 F. Supp. 1048, 1073 (S.D.N.Y. 1996).  <u>See also</u> <u>Hilton v.
Braunskill</u>, 481 U.S. 770, 775 (1987) ("In construing § 2243 and its
predecessors, this Court has repeatedly stated that federal courts
may delay the release of a successful habeas petitioner in order to
provide the State an opportunity to correct the constitutional
violation found by the court."); <u>Mayo v. Henderson</u>, 13 F.3d 528,
537 (2d Cir. 1994) (affirming grant of writ conditioned on
petitioner being afforded opportunity to present his appeal as if
timely and properly presented, or alternatively afforded a new
trial).  Such a remedy is appropriate here inasmuch as petitioner's
sole claim raised in this habeas petition is one of ineffective
assistance of counsel on direct appeal and not of trial court
error.  As such, the State should be given the opportunity to

correct the constitutional violation as found by this Court and permit petitioner to present a new appeal as if timely and properly presented so that he may include the _Faretta_ claim which was omitted initially through the ineffective assistance of his appellate counsel.


Accordingly,

**IT IS HEREBY RECOMMENDED** that petitioner Richard Bilauski's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be conditionally granted.

**IT IS FURTHER RECOMMENDED** that petitioner be permitted to present a new appeal of his conviction and present his claim based on _Faretta v. California_ to the Missouri Court of Appeals within sixty (60) days of the Court's final order disposing of this cause.

**IT IS FURTHER RECOMMENDED** that, in the event petitioner is not permitted to pursue such a new appeal, the petition for writ of habeas corpus be granted, that petitioner's conviction be vacated, and that petitioner be afforded a new trial within a time as determined by the district court. If the State does not afford a new trial within such time, petitioner should be released from custody.

The parties are advised that any written objections to this Report and Recommendation shall be filed not later than **January 22, 2013.** Failure to timely file objections may result in

waiver of the right to appeal questions of fact.  <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990) (*per curiam*).


_____
UNITED STATES MAGISTRATE JUDGE


Dated this  *8th*  day of January, 2013.